# IN THE COURT OF APPEALS OF IOWA

No. 16-1325
Filed June 21, 2017

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**KYLE ALLEN SMITH,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

A defendant appeals his sentence. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

Kyle Smith appeals his sentence, claiming the district court erred by not considering the factors outlined in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), in fashioning his sentence and by improperly considering his juvenile record. Because we conclude the district court did not abuse its discretion in sentencing Smith, we affirm.

## I.      Background Facts and Proceedings

On January 20, 2016, the State charged Smith, as well as three other codefendants, with robbery in the second degree, in violation of Iowa Code section 711.1 and 711.3 (2015).  On April 29, Smith entered an *Alford*[1] plea as part of a plea agreement with the State; in exchange, the State agreed not to argue for imposition of the seven-year mandatory minimum on Smith, who was seventeen years old at the time he committed the crime.  The district court accepted Smith's plea and set sentencing for June 30.

At sentencing, the State recommended a ten-year prison sentence; Smith sought a deferred judgment.  The district court agreed with the State's recommendation, stating:

> So what it comes down to basically is this.  Services were repeatedly offered to him as a juvenile and time upon time upon time he failed in receiving any benefit from those services.  And yet we're here once more this time in district court, adult court, with him and this is a very serious matter where a man's life was potentially threatened and he was shot repeatedly with a BB gun.  I know full well your man didn't shoot him, but nonetheless he was part in parcel of what led to the shooting.  He was instrumental in the planning of this and he willingly took part in it and even though he not—he did not do the shooting and may not have intended that

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding a defendant may enter a plea of guilty without an admission of guilt).

anyone be shot, the facts remain that the victim feared for his life and rightly so and was shot repeatedly by another one of these five individuals.

Mr. Smith, a deferred judgment is a possibility for you as is a suspended sentence, but neither one will come your way. You have demonstrated that you're not going to change because on five separate occasions you were placed in detention and on five separate occasions as a juvenile you failed in those placements and then there are other placements of you short of detention and you failed in those as well. So on the count of robbery in the second degree, contrary [sic] to section 711.3 of the Code, a class "C" felony, I will order you committed to the custody of the director of the department of corrections for not to exceed ten years. There will not be the 70 percent mandatory minimum that otherwise would flow from 902.12. I don't see a need for that because perhaps there is some hope that you will learn from this. You did perform beneficial services when you were caught. You did identify the people who had engaged in this conduct with you, and you did testify against a codefendant, and so that warrants a deviation from what might come your way under 902.12, the 70 percent mandatory minimum. We're not going to do that. There will be a fine of $1000 plus a 35 percent surcharge. The fine and surcharge will be suspended.

Smith appeals.

## II.     Scope and Standard of Review

When a sentence falls within statutory limits, we review it for abuse of discretion. *State v. Seats*, 865 N.W.2d 545, 552 (Iowa 2015).

In applying the abuse of discretion standard to sentencing decisions, it is important to consider the societal goals of sentencing criminal offenders, which focus on rehabilitation of the offender and the protection of the community from further offenses. It is equally important to consider the host of factors that weigh in on the often arduous task of sentencing a criminal offender, including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform . . . . The application of these goals and factors to an individual case, of course, will not always lead to the same sentence. Yet, this does not mean the choice of one particular sentencing option over another constitutes error. Instead, it explains the discretionary nature of judging and the source of the respect afforded by the appellate process.

*Id.* at 552–53 (quoting *State v. Formaro*, 638 N.W.2d 720, 724–25 (Iowa 2002)).

### III.     Consideration of the *Miller* Factors

Smith claims the district court erred in failing to consider the *Miller* factors on the record in imposing the sentence. The State, citing *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014), claims the court was not required to consider the *Miller* factors because it did not impose the mandatory minimum.

In *Miller*, the United States Supreme Court determined mandatory life-without-parole sentences for juveniles violated the Federal Constitution. 132 S. Ct. at 2469. While the Court did not completely ban life-without-parole sentences for juveniles, it did require sentencing courts "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* In *State v. Ragland*, 836 N.W.2d 107, 115 (Iowa 2013), our supreme court, in interpreting *Miller*, stated, "*Miller* requires courts to establish a procedure providing for an individualized sentencing hearing tailored to the unique attributes of juveniles when prosecuted as adults for homicide and facing a sentence of life without parole." Our supreme court extended this rule under our state constitution: "[W]e conclude all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in article I, section 17 of our constitution." *Lyle*, 854 N.W.2d at 400. In doing so, the court focused on the mandatory imposition of a minimum sentence before the juvenile offender was eligible for parole: "Accordingly, the heart of the constitutional infirmity with the punishment imposed in *Miller* was its mandatory imposition, not the length of the sentence. The mandatory nature of the punishment establishes the constitutional violation." *Id.*

at 401. Thus, under our current jurisprudence, sentencing courts are required to hold an individualized sentencing hearing and consider the relevance of the *Miller* factors to a juvenile defendant prior to imposing a mandatory minimum sentence. *See id.* at 400–01.

The district court's sentencing decision in this case does not run afoul of the current state of the law. While Smith was a juvenile when he committed this crime, the court did not impose a mandatory minimum sentence he must serve prior to parole eligibility. Rather, the court imposed an indeterminate ten-year sentence of imprisonment resulting in Smith being immediately eligible for parole. The sentence falls squarely within the bounds of *Lyle* and other relevant precedent. *See id.* at 401 ("It is important to be mindful that the holding in this case does not prohibit judges from sentencing juveniles to prison for the length of time identified by the legislature for the crime committed."). While the district court certainly was free to discuss the *Miller* factors on the record, we find no abuse of discretion when it does not do so when declining to impose a minimum sentence of imprisonment.

## IV.    Consideration of Juvenile Adjudications

Smith next argues the district court erred by considering his prior juvenile adjudication in fashioning his sentence. The State contends it was proper for the district court to consider Smith's juvenile adjudication.

In exercising discretion in sentencing, courts consider a "host of factors that weigh in on the often arduous task of sentencing a criminal offender, including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform." *Formaro*,

638 N.W.2d at 725. Additionally, juvenile adjudication and disposition proceedings are admissible "in a sentencing proceeding after conviction of the person for an offense other than a simple or serious misdemeanor." Iowa Code § 232.55(2)(a).

The record reflects the district court properly considered the relevant factors in fashioning Smith's sentence, including his juvenile adjudication. The court explained its consideration of Smith's juvenile adjudication in the context of its judgment regarding Smith's capacity for reform. The court also discussed the nature of the offense, the attendant circumstances, Smith's role in the crime, and Smith's cooperation after arrest. We see nothing in the record that suggests the court's sentencing decision was based on clearly untenable or unreasonable grounds. Accordingly, we conclude the district court did not abuse its discretion in sentencing Smith.

## V. Conclusion

Because we conclude the district court did not abuse its discretion in sentencing Smith, we affirm.

**AFFIRMED.**